UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>YOUNG'S COMMERCIAL TRANSFER, INC., a corporation, and RIGOBERTO FERNANDEZ JIMENEZ, an individual, d/b/a JIMENEZ TRUCKING,<br><br>Defendants. | No. 1:13-cv-01506-DAD-EPG<br><br><u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u><br><br>(Doc. No. 62.) |

This matter came before the court on April 19, 2016, for a hearing on the motion for summary judgment filed on behalf of the National Railroad Passenger Corporation and Barbara Neu, (Doc. No. 62). At that hearing attorney Shane Reich of the Reich Law Firm appeared on behalf of the Celia Ramirez; attorney Ryan D. Libke of Emerson, Corey, Sorensen, Church & Libke appeared on behalf of Young's Commercial Transfer, Inc. and Rigoberto Fernandez Jimenez; and attorney Vincent Castillo of Lombardi Loper & Conant, LLP appeared on behalf of the National Railroad Passenger Corporation. Having heard the parties' oral argument and considered their briefing and evidence, for the reasons explained below the motion for summary judgment will be granted in part and denied in part.

/////

BACKGROUND

The National Railroad Passenger Corporation ("Amtrak"), filed a complaint against Young's Commercial Transfer, Inc. ("Young's") and Rigoberto Fernandez Jimenez, individually and d/b/a Jimenez Trucking, on September 10, 2013.  (Doc. No. 1.)  On September 5, 2014, that action was consolidated with *Ramirez v. Jimenez, et al.*, Case Number 1:13-cv-02085.  (Doc. No. 27.)  On January 25, 2016, this court dismissed the parties in the lead case of the consolidated action, leaving only the claims brought by Celia Ramirez, an Amtrak train passenger, against Rigoberto Fernandez Jimenez, Jimenez Trucking, Amtrak, Amtrak engineer Barbara Neu, BNSF Railway Company ("BNSF"), and Young's.  (Doc. No. 52.)  On April 18, 2016, the parties stipulated to dismissal of BNSF as a party to the action.[1]  (Doc. No. 83.)

In the complaint, plaintiff Celia Ramirez brings four claims against defendants, alleging: (1) BNSF's negligence in ownership and maintenance of crossing and warning systems, (2) Amtrak's negligent failure to train Neu, (3) Amtrak's negligent failure to properly warn passengers in emergency situations, and (4) Neu's negligence in operating the Amtrak train.  (Doc. No. 63-1.)  Plaintiff seeks damages that include general damages according to proof, special damages including past and future medical and incidental expenses, loss of earnings and earning capacity, and costs of suit.  (Doc. No. 63-1 at 8.)  Defendants Rigoberto Jimenez and Young's also bring a cross-complaint against Amtrak and Barbara Neu, alleging equitable indemnity, comparative fault, and negligence based on the alleged negligent operation and entrustment of the train.  (Doc. No. 63-2.)

The following facts are undisputed by the parties on summary judgment.  On September 19, 2011, Amtrak Train No. 713-19 was travelling in a northwestern direction from Bakersfield to Oakland, California, on a Class 4 track.  (Doc. No. 77-1 at 8, ¶ 25.)  The train was operated by Barbara Neu, a locomotive engineer employed by Amtrak.  (*Id.* at 7, ¶ 22.)  At approximately 1:35 p.m., the train approached the rail crossing of Geer Road near Santa Fe Avenue outside of

---

[1] For ease of reference and in light of the claims and parties still remaining in this action, the court will refer to Celia Ramirez as the plaintiff in this action, and to Young's, Rigoberto Fernandez Jimenez, Jimenez Trucking, Amtrak, and Barbara Neu as the defendants.

2

Modesto, California. (*Id.* at ¶ 19–20.) The rail crossing was located on property owned and maintained by BNSF, and was equipped with train-activated warning devices including flashing lights and gates in both north and southbound directions. (*Id.* at ¶ 34.)

At the same time the train approached the Geer Road rail crossing, a truck was traveling north on Geer Road. (*Id.* at ¶ 27.) The truck was operated by defendant Jimenez, owned by Jimenez Trucking, and was towing utility flatbed trailers owned by Young's. (*Id.* at ¶ 20–21.) The truck came to a stop north of the crossing, however, with the second attached trailer blocking the railroad tracks. (*Id* at ¶ 28–30.) As the Amtrak train neared the rail crossing, the train sounded its horn and train-activated signals were engaged. (*Id.* at ¶ 41–47.) Nonetheless, Jimenez did not move his truck and the Amtrak train ultimately struck the trailer. (*Id.* at ¶ 31.) Plaintiff, a passenger on board the Amtrak train at the time of the collision, allegedly suffered "serious personal injuries" as a result of the train's collision with the trailer. (Doc. No. 63-1.)

On February 26, 2016, defendants Amtrak, Barbara Neu, and BNSF, filed a motion seeking summary judgment in their favor.[2] (Doc. No. 62.) On April 5, 2016, defendants Rigoberto Jimenez, Jimenez Trucking, and Young's filed their opposition to that motion for summary judgment. (Doc. No. 75.) On the same day, plaintiff filed her opposition to the summary judgment motion. (Doc. No. 77.) On April 12, 2016, defendants Amtrak and Barbara Neu filed their reply. (Doc. No. 78.)

Defendants Amtrak and Neu advanced two arguments in moving for summary judgment in their favor. First, they assert that all claims against Amtrak concerning failure to train and failure to warn are preempted by federal regulations concerning railroad emergency preparations. (Doc. No. 62 at 27–34.) Second, they argue that claims against Neu are preempted by federal regulations setting maximum passenger train speeds. (*Id.* at 34–35.) Defendants Amtrak and Neu also argue that, while claims for breach of tort duties to avoid specific, individual hazards are not

---

[2] Because BNSF was subsequently dismissed from the action by way of stipulation (Doc. No. 83), it will not hereinafter be referred to with respect to that summary judgment motion. Specifically, BNSF's argument that plaintiff's claim against it were preempted by federal regulations and that that neither plaintiff nor defendant Jimenez can establish a violation of federal regulations sufficient to state a claim avoiding federal preemption (Doc. No. 62 at 22–23), need not be addressed in light of that dismissal.

3

preempted by federal speed limit regulations, plaintiff has not come forward with any evidence on summary judgment meeting their burden to show the breach of such duties, or to demonstrate that defendant Neu's actions caused plaintiff's alleged injuries. (*Id.* at 35–41.) The court analyzes these arguments below.

## LEGAL STANDARDS

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On a motion for summary judgment, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may meet its burden by "citing to particular parts of materials in the record, including depositions, documents, electronically store information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . . , is satisfied." *Id.* at 323.

/////

If the moving party meets its burden, the burden then shifts to the opposing party to demonstrate the existence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

When evaluating the evidence to determine whether there is a genuine issue of fact, the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa Cty. Transit Authority*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

/////

## ANALYSIS

Under the Supremacy Clause, Congress has the power to pre-empt state law. U.S. Const. art. VI, cl. 2. There are two types of preemption—field and conflict preemption. *California v. ARC America Corp.*, 490 U.S. 93, 101 (1989). Field preemption "is applied when Congress intends federal law to 'occupy the field,'" with the result being that "all state law in that area is preempted." *Id.* Conflict preemption exists when "the state law makes it either impossible to follow the federal law or provides a significant obstacle to adhering to the federal law." *Freightliner Corp v. Myrick*, 514 U.S. 280, 287 (1995). *See also CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (explaining that a state statute is preempted where it conflicts with or frustrates federal law).

However, pre-emption only applies if it is "the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Congressional intent to preempt may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007) (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1997). *See also Easterwood*, 507 U.S. at 664 (stating that "the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent").

In moving for summary judgment defendants Amtrak and Neu argue that plaintiff's claims are preempted under the Federal Railroad Safety Act ("FRSA") and related regulations promulgated by the Federal Railroad Administration ("FRA").

To determine whether the FRSA was passed with preemptive intent, the court must first look to the language of the statute. *Easterwood*, 507 U.S. at 664. The FRSA contains an express preemption provision that states: "Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106. "A State may adopt or continue in force a law, regulation, or order related to railroad safety [until the FRA] prescribes a regulation or issues an order covering the subject matter of the State requirement." *Id.*

/////

6

The express preemption clause indicates that the FRSA does not occupy the field of railroad safety, but rather preempts state laws that "cover the same subject matter" as an FRA regulation by "address[ing] the same safety concern." *Burlington N.RY. Co. v. State of Mont.*, 880 F.2d 1104, 1105 (9th Cir. 1989). *See also Easterwood*, 507 U.S. at 658, 664 (explaining that, to cover the same subject matter, an FRSA regulation must "substantially subsume" the subject matter of the state law, and must do more than "touch upon" or "relate to" that subject matter); *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149, 1153 (9th Cir. 1983). FRA regulations have preemptive effect not only on state and local statutes and regulations, but also on state common law tort claims. *Easterwood*, 507 U.S. at 570–71. However, while the FRSA expressly provides for preemption of state law claims, a plaintiff may state a cognizable claim and avoid federal preemption by alleging "a railroad's failure to comply with federal regulations or its own regulations." *S. Cal. Reg'l Rail Auth. v. Sup.Ct.*, 163 Cal. App. 4th 712, 735–38 (2008). *See also Grade v. BNSF Ry. Co.*, 676 F.3d 680, 65–86 (8th Cir. 2012); *cf. Prentice v. National Railroad Passenger Corp*, No. 12-cv-05856-MEJ, 2014 WL 3868221, at *10 (N.D. Cal. Aug. 6, 2014) (noting that it is insufficient to allege, in support of a claim of gross negligence, a violation of a railroad's own rules without citing to any applicable federal regulation mandating these rules).

## I.     Plaintiff's claims against Amtrak

In their motion for summary judgment, defendants Amtrak and Neu argue that plaintiff's claims against Amtrak based on allegations of a negligent failure to properly train employees and failure to adequately warn passengers of emergency situations are subject to federal preemption.

### a.     Failure to train

The FRA's Part 217, 218, and 240 regulations establish qualification and certification requirements for locomotive engineers. Part 240 is geared towards ensuring that "only qualified persons operate a locomotive or train," and prescribes "minimum Federal safety standards for the eligibility, training, testing, certification and monitoring of all locomotive engineers to whom it applies." 49 C.F.R. § 240.1. Part 217 regulations provide additional instruction and training of employees as to operating rules, and Part 218 sets out minimum requirements for railroad operating rules and practices. *See, e.g.*, 49 C.F.R. §§ 217.1–217.13, 218.1–218.11.

The Ninth Circuit has found that "[i]t is clear that the federal training regulations do 'substantially subsume' the subject of employee training." *Union Pacific R.R. Co. v. Cal. Pub. Util. Comm'n*, 346 F.3d 851, 865 (9th Cir. 2003). As a result, federal training regulations preempt state laws concerning employee training or negligence with respect to such training. *Id.* at 868 (9th Cir. 2003); *see also Prentice*, 2014 WL 3868221, at *5–8 (finding FRSA rules concerning employee training to be preemptive, and barring a state law negligence claim alleging failure to adequately train a locomotive engineer).

Defendants Amtrak and Neu argue that plaintiff's claims against Amtrak for negligent training are preempted by federal law. (Doc. No. 62 at 29–30.) Specifically, they argue that federal regulations set forth in 49 C.F.R. Part 240 subsume any state law claims concerning railroad employee training. (*Id.*) Defendants also contend that plaintiff has not come forward with any evidence on summary judgment indicating a violation of federal law, noting that plaintiff's expert Culver "does not opine that Amtrak violated any federal regulation regarding engineer training or the implementation of operating rules, but instead relies on a common law duty of care analysis." (Doc. No. 63-7.) Moreover, defendants affirmatively offer evidence in support of their motion for summary judgment to establish their compliance with applicable FRA regulations. They point to the following evidence before the court: the declaration of Amtrak Assistant Superintendent Road Operations Patrick Sullivan, in which he states that no violation of Part 217 or Part 218 occurred before the collision of September 19, 2011, (Doc. No. 66 at 3–5); and the declaration of defense expert Brian Heikkila in which it is explained that Amtrak's testing program for locomotive engineers was in compliance with federal regulations before the collision, and that training received by defendant Neu was also in compliance with Amtrak's federally-approved training program, (Doc. No. 65 at 8–9).

Plaintiff refutes defendants' arguments by generally arguing in conclusory fashion that her negligent training claims are not preempted. (Doc. No. 77 at 12.) Plaintiff also suggests that Amtrak's training methodology violates federal regulations set forth in 49 C.F.R. Part 240. To support this contention, plaintiff points to the following evidence: deposition testimony from engineer defendant Neu, who testified that she did not know how to determine stopping distance

8

for the train she was operating, (Doc. No. 77-4 at 5); and a report from plaintiff's expert Charles Culver in which he addresses Neu's deposition testimony and states that "having no knowledge of its stopping capabilities, in my opinion, is an act of negligence." (Doc. No. 77-2 at 18.)[3] In their opposition to the pending summary judgment motion, defendants Jimenez and Young barely address plaintiff's negligent training claim, arguing only that because plaintiff's complaint does not allege facts relating to a negligent training theory, defendant Amtrak's arguments on summary judgment should be disregarded. (Doc. No. 75 at 5.)

Defendants Amtrak and Neu, in reply, note that plaintiff "fails to provide any support for her argument that her failure to train claims are not preempted," describing plaintiff's arguments concerning Neu's ability to estimate train stopping distance as "not relevant." (Doc. No. 78 at 4.) Defendants also refute plaintiff's evidentiary objections. (*Id.* at 4.) With respect to expert Heikkila's report, defendants contend that there was no late disclosure because plaintiff's complaint plaintiff did not include allegations against Amtrak concerning the failure to train its engineers, and that Neu's training was not raised as an issue by plaintiff until disclosure of her expert Culver. (*Id.*) Defendants also argued that they properly produced evidence with respect to Neu's employment file during discovery, pointing their responses to interrogatories relating to Neu's training. (Doc. No. 80 at 14, § 14). (*Id.*)[4]

The Ninth Circuit has held that federal training regulations preempt common law claims of negligent employee training. *Union Pacific R.R. Co*, 346 F.3d at 868. Plaintiff has made no persuasive argument to the contrary. Though plaintiff Ramirez argues that Amtrak has breached federal regulations on railroad employee training, she provide no clear articulation of which regulations were violated and how Amtrak's policies allegedly do not comply with them. Rather, plaintiff merely contends in conclusory fashion that "[federal] standards cannot be met where the

---

[3] Plaintiff also objects to certain evidence relied upon by defendants in moving for summary judgment, arguing that expert Heikkila's discussion of Amtrak training was not included in his expert declaration, and that defendant Neu's employment file was not provided by the discovery cut-off. (Doc. No. 77 at 12.) These discovery-related arguments are unavailing at this late stage of the litigation.

[4] Defendants also correctly state that "any discovery issues should have been addressed earlier in a discovery motion." (*Id.* at 5.)

engineer is not trained on estimating stopping distance which is an obvious requirement of meeting the standards." (Doc. No. 77 at 13.) Plaintiff objects to certain evidence produced by defendants Amtrak and Neu demonstrating Amtrak's compliance with federal training regulations. However, plaintiff must do more than make such objections to meet her burden in opposing summary judgment—she must come forward with evidence in support of her failure to train claim. *See Celotex Corp*, 477 U.S. at 323 (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). Plaintiff has not done so. Accordingly, summary judgment must be granted in favor of the defendants as to plaintiff Ramirez's claims based upon defendant Amtrak's alleged failure to train.

### b. Failure to warn claims

The FRA's Part 239 regulations set out federal standards on emergency preparation for railroads. In particular, Part 239 sets out minimum federal safety standards for the preparation, adoption, and implementation of emergency preparedness plans by railroads connected with the operation of passenger trains. 49 C.F.R. § 239.101. These regulations guide how the railroads should prepare for and address emergency situations. The regulations define emergency situations as "unexpected event[s] related to the operation of passenger train service involving a significant threat to the safety or health of one or more persons," including "derailment[s]." 49 C.F.R. § 239.7(2).

Several Part 239 regulations address communication between train employees and passengers during such emergency situations. For instance, each railroad's plan shall provide for passenger awareness of emergency procedures, to enable passengers to respond properly during an emergency. 49 C.F.R. § 239.101(a)(7)(i). The regulations also provide that "[a]s appropriate, an on-board crewmember shall inform the passengers about the nature of the emergency and indicate what corrective countermeasures are in progress." 49 CFR § 239.101(a)(1)(i). *See also Haynes v. National R.R. Passenger Corp*, 423 F. Supp. 2d 1073, 1082 (C.D. Cal. 2006) (citing *Rodriguez v. Ansett Australia Ltd.*, 383 F.3d 914, 916–17 (9th Cir. 2004) (noting that federal regulations establish rules for warning passengers of risks faced during emergency situations, but

not necessarily for health risks faced during non-emergency situations).

The FRA's regulations on emergency preparations for railroads have a preemptive effect. *See* 49 C.F.R. Part 239, 79 FR 18128-01, 18133 (noting that a provision of the Passenger Train Emergency Preparedness regulation explicitly discussing the preemptive effect of the regulations had been removed as "unnecessary because it is duplicative of statutory law at 49 U.S.C. § 20106 and case law, which sufficiently address the preemptive scope of FRA's regulations").

Defendants Amtrak and Neu move for summary judgment in their favor with respect to plaintiff's failure to warn claims against them on two grounds. (Doc. No. 62 at 32–33.) First, defendants argue that the FRA's regulations on emergency preparations for railroads comprehensively address railroads' responsibilities for passenger safety, and preempt all negligence claims for failure to warn passengers in emergency situations. (*Id.*) Defendants also contend that plaintiff has not come forward with any evidence on summary judgment demonstrating that Amtrak violated any federal regulations on emergency preparations. (*Id.*) In particular, defendants note that plaintiff's expert, Culver, identifies no violation of any such regulations or of any of Amtrak's own rules created pursuant to those regulations. (*Id.* at 32.) Moreover, defendants have also come forward on summary judgment with evidence of their compliance with federal regulations in this regard, citing the declaration of Amtrak Assistant Superintendent Patrick Sullivan in which it is explained that at the time of the collision, Amtrak maintained an Emergency Preparedness Plan which complied with the applicable federal regulations. (Doc. No. 66 at 5.)

Plaintiff counters defendants' arguments concerning her negligent failure to warn claims, first merely arguing that such claims are not preempted: "While the failure to have a method of communicating directly with passengers might arguably be preempted, Defendants have not established that here." (Doc. No. 77 at 12.) Plaintiff provides no further explanation as to how her failure to warn claims are not preempted. Second, plaintiff argues that Amtrak violated 49 C.F.R. § 239.101, which requires railroad employees to inform passengers about the nature of an emergency "as appropriate." (*Id.* at 13.) However, plaintiff does not explain, or come forward with any evidence to support, her contention that Amtrak's policies violated that regulation in this

11

instance.  Instead, plaintiff states merely that "communication in this context would be appropriate and necessary."  (*Id.*)[5]  Plaintiff's arguments are unpersuasive and her evidence in support of this claim wholly lacking.

Defendants have demonstrated that federal regulations in this area fully address railroad responsibilities during emergencies, and that those regulations preempt state negligence claims related to the failure to warn passengers before collisions.  In order to survive summary judgment, plaintiff would therefore need to show a genuine dispute of material fact as to whether Amtrak violated federal regulations, or one of its own rules created pursuant to such a regulation.  Plaintiff has not done so.  As a result, defendants are entitled to summary judgment in their favor with respect to plaintiff's claims against Amtrak for negligent failure to warn.

## II.     **Plaintiff's claims against Barbara Neu**

Federal regulations enacted pursuant to the FRSA also establish maximum passenger train speeds based on the class of track upon which the trains travel.  Under 49 C.F.R. § 213.9, the maximum allowable operating speed for a passenger train traveling on a Class 4 track is eighty miles per hour.  49 C.F.R. § 213.9.

FRSA regulations "should be understood as covering the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings," and they generally preempt state or common-law tort claims based on excessive train speed.  *CSX Transp., Inc. v. Easterwood*, 507 U.S. at 675.  *See also Federal Ins. Co. v. Burlington Northern and Santa Fe Ry. Co.*, 270 F. Supp. 2d 1183, n.5 (C.D. Cal. 2003) (noting, in the context of a case involving a train derailment, that a negligence claim based upon an allegation that "the train was travelling at an excessive speed" could not be brought because "[a] claim of excessive speed is clearly preempted").

There are several ways that plaintiffs may escape preemption of claims based on excessive train speed, however.  For one, plaintiffs can avoid federal preemption by alleging a railroad's violation of federally established speed limits.  *See Nippon Yusen Kaisha v. Burlington and*

---

[5] Defendants Jimenez and Young's, in their opposition to the pending summary judgment motion, do not take a position on plaintiff's failure to warn claims.  (Doc. No. 75 at 7–8.)

12

*Northern Santa Fe Fy. Co.*, 367 F. Supp. 2d 1292, 1303 (C.D. Cal. 2005) (stating that "federal regulations provide the duty of care in this area [of train speed limits], and [defendant] is only negligent if it violated them"); *see also S. Cal. Reg'l Rail Auth. v. Sup.Ct.*, 163 Cal. App. 4th 712, 735–38 (2008) (explaining that a plaintiff may state a cognizable claim which avoids federal preemption by alleging "a railroad's failure to comply with federal regulations or its own regulations").

Additionally, federal regulations setting speed limits do not "bar suit for breach of related tort duties, such as the duty to slow or stop a train to avoid a specific, individual hazard." *Easterwood*, 507 U.S. at 676, n.15. Courts addressing this preemption exception for specific, individual hazards have found that the hazard in question "must be something out of the ordinary" that "logically relates to the avoidance of a specific collision." *Liboy v. Rogero*, 363 F. Supp. 2d 1332, 1340 (M.D. Fla. 2005) (citing *Wright v. CSX Trans. Inc.*, 375 F.3d 1252, 1259 (11th Cir. 2004)); *Beausoleil v. National R.R. Passenger Corp.*, 145 F. Supp. 2d 119, 121 (D. Mass. 2001) (quoting *Armstrong v. Atchison, Topeka & Santa Fe Railway Company*, 844 F. Supp. 1152, 1153 (W.D. Tex. 1994)). "It has been consistently emphasized that the kinds of conditions that could constitute a 'specific individual hazard' are limited to transient conditions that could lead to an imminent collision, such as a child standing on the railway or a motorist stranded on a crossing or improperly parked tank cars which obstruct the view of the train engineer." *Carter v. National Railroad Passenger Corporation*, 63 F. Supp. 3d 1118, 1155 (N.D. Cal. 2014) (quoting *Baker v. Canadian Nat'l / Illinois Cent. Railway Co.*, 397 F. Supp. 2d 803, 814 (S.D. Miss. 2005). As a general rule, however, "a railroad is not liable for failure of its train to slow or stop simply because a pedestrian or vehicle approaches a track ahead." *Carter*, 63 F. Supp. 3d at 1155 (quoting *Florida E. Coast Ry v. Griffin*, 566 So.2d 1321, 1324 (Fla. 4th DCA 1990)); *see also O'Bannon v. Union Pacific R.R. Co.*, 960 F. Supp. 1411, 1421 (W.D. Mo. 1997).

If the exception to preemption for specific individual hazards applies, a party may bring a tort law claim for negligence. However, to prevail on a negligence claim under California law, a plaintiff must still establish that the defendant had a duty to the plaintiff, that the duty was breached by negligent conduct, and that the breach was the cause of damages to the plaintiff.

13

*Carter*, 63 F. Supp. 3d at 1144.  "In California, the causation element of negligence is satisfied when the plaintiff establishes:  (1) that the defendant's breach of duty (his negligent act or omission) was a substantial factor in bringing about the plaintiff's harm and (2) that there is no rule of law relieving the defendant of liability."  *Leslie G. v. Perry & Associates*, 43 Cal. App. 4th 472, 481 (1996).  One consideration in determining whether the defendant's acts were a substantial factor is "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm."  *Thomas v. Burlington Northern Santa Fe Corp.*, No. CV-F-05-1444 OWW/DLB, 2007 WL 2023534, at *19 (E.D. Cal. July 12, 2007) (citing Restatement (Second) of Torts § 433(b)).

      Here, defendant Neu moves for summary judgment in her favor on plaintiff's negligence claims on three grounds.  First, Neu argues that any negligence claims based on allegations of excessive speed are subject to federal preemption. (Doc. No. 62 at 34–37.)  In support of this contention, Neu cites the declaration of defense expert Heikkila, in which he explains that, according to the locomotive event recorder, the train was traveling at approximately seventy nine miles per hour prior to the accident, in compliance with federal speed regulations.  (Doc. No. 65 at 5, ¶ 16.)  Second, defendant Neu argues that Jimenez's truck only presented a specific, individual hazard triggering the exception to preemption once it failed to move from the train crossing after she had sounded the train's horn, and that it is undisputed that she appropriately initiated the emergency brake and slowed the train once it appeared that the truck tractor might not move.  (Doc. No. 62 at 35-37.)  Defendants also point to the declaration of defense expert Heikkila setting forth the chronology of events leading up to the accident.  (Doc. No. 65 at 6.)  Therein, Heikkila states that the truck entered the crossing twenty seven seconds prior to impact; the truck stopped on the tracks when the train was twenty seconds away from the crossing; Neu sounded the locomotive horn and warning bell after seeing the truck; and, after sounding the horn for eight seconds, Neu, initiated the emergency brake ten and a half seconds before impact.  (Doc. No. 65 at 6.)  Defendants also cite to the deposition of Jimenez in which he testified to hearing the train sound its horn before impact.  (Doc. No. 63-9 at 9.)  Thus, while Neu did not slow the train immediately upon seeing the Jimenez truck, defendants argue, the evidence on summary

judgment establishes that she immediately engaged warning signals to alert Jimenez of the train's presence, and appropriately applied the emergency brake once it became clear the truck would not move and a collision was imminent. (Doc. No. 62 at 35–37.) Defendants also emphasize that despite this showing, plaintiff has not offered any evidence of Neu's negligence. (Doc. No. 62 at 37–39.) While opposing experts Culver and Layton both state that in their opinion Neu should have slowed the train earlier, they do not refute the evidence that Neu slowed the train once a collision became imminent. (Doc. No. 62 at 37–40.)

Finally, defendants argue that, even if Neu acted negligently, plaintiff cannot demonstrate that any such negligence caused her injuries. (Doc. No. 62 at 40.) In this regard, defendants rely on the deposition of plaintiff's expert Culver at which he testified that Neu should have applied the emergency brake when the truck stopped on the railroad crossing, but conceded that her doing so would not have prevented the collision. (Doc. No. 62 at 40.)

In opposing defendants' summary judgment motion, plaintiff advances three arguments with respect to her negligence claims against Neu. First, plaintiff argues that, even if preemption applies, defendant Neu violated Amtrak operating rules which were created pursuant to federal regulations. (Doc. No. 77 at 11–12.) Plaintiff points to three rules in particular—Rule 1.1, which states that "Safety is the most important element in performing duties"; Rule 1.1.1, which states that "in case of doubt or uncertainty, [employees must] take the safe course"; and Rule 1.47, which states that "the conductor and the engineer are responsible for the safety and protection of their train and observance of the rules . . . [and i]f any conditions are not covered by the rules, they must take precautions to provide protection." (*Id.*)[6] In responding to defendants' statement of undisputed facts, plaintiff also refutes defendants' assertion that Neu complied with federal speed regulations prior to the accident, suggesting that the train traveled "in excess of the 79 mph limit that the railroad established as its own speed limit." (Doc. No. 77-1 at 8, ¶ 23.)

Second, plaintiff argues that even if negligence claims based on excessive speed are generally subject to preemption, the exception to preemption for individual hazards is broader

---

[6] *See* Amtrak General Code of Operating Rules, Rules 1.1, 1.1.1, 1.47 (6th ed. 2010).

15

than defendants contend. (Doc. No. 77 at 7–8.) Plaintiff asserts that defendants' understanding of the exception to preemption is flawed, and that only California law is relevant to analyzing the scope of preemption under the FRSA. (Doc. No. 77 at 7.) Plaintiff contends that railroad engineers have a duty to stop or slow a train whenever there is any hazard on the crossing, not just a hazard presenting the possibility of imminent collision. (Doc. No. 77 at 9.) In support of this broad contention, however, plaintiff cites only to cases in which courts have identified a duty to slow or stop a train based on the possibility of an imminent collision. *See, e.g.*, *Carter*, 63 F. Supp. 3d at 1154 (finding that a negligence claim was not preempted due to the "specific individual hazard" of a pedestrian with unleashed dogs near railroad tracks). Plaintiff also argues that defendant Neu breached the duty to appropriately slow the train, citing the following evidence: Neu's deposition at which she testified she did not know how to determine the train's stopping distance, (Doc. No. 77-4 at 5); and expert Culver's report in which he generally states that Neu was negligent in not stopping the train earlier. (Doc. No. 77-2 at 18).[7]

Finally, plaintiff refutes defendants' arguments concerning causation. Plaintiff contends that the earlier engagement of the brakes by Neu would have given Jimenez's truck more time to move away from the crossing, at least reducing the impact of the collision and allowing plaintiff time to brace herself and avoid or mitigate injury. (*Id.* at 2, 5.) In support of this argument, plaintiff cites to the declaration of her expert Culver, in which he states that a warning from Neu would have "given [passengers] a chance to brace themselves . . . thereby greatly reducing the probability of injury." (Doc. No. 77-2 at 7–8.)

Based upon the evidence submitted, the court concludes that defendants have not met their burden on summary judgment with respect to plaintiff's claims against Neu. Defendants correctly argue that claims based on excessive speed are generally preempted by federal law, given the existence of FRA regulations establishing speed limits for trains traveling on Class 4 tracks. *See, e.g.*, *Easterwood*, 507 U.S. at 675. The court is also unpersuaded by plaintiff's

---

[7] Plaintiff also argues in conclusory fashion that defendant Neu acted negligently by not warning passengers of the impending collision. (Doc. No. 77 at 5.) However, plaintiff offers no evidence or authority to support this contention.

16

1  arguments that defendant violated Amtrak internal rules enacted pursuant to federal regulations.
2  Federal courts have overwhelmingly held that federal regulations specifying speed limits for
3  different types of tracks and trains are not affected by internal railroad policies setting maximum
4  train speeds. *See Hesling v. CSX Transp., Inc.*, 396 F.3d 632 (5th Cir. 2005) (finding that even
5  internal rules of a railroad carrier capping the speed of a train operating on its track are preempted
6  by FRSA); *Michael v. Norfolk S. Ry. Co.*, 74 F.3d 271, 273 (11th Cir. 1996) (same); *see also*
7  *Murrell v. Union Pacific R. Co.*, 544 F. Supp. 2d 1138, 1149 (D. Or. 2008). Furthermore, even if
8  it could be credibly claimed that the very general Amtrak operating rules cited by plaintiff—
9  Rules 1.1, 1.1.1, 1.47—were violated, plaintiff has failed to point to any federal regulations
10  mandating the adoption of those operating policies. *Cf. Prentice*, 2014 WL 3868221, at *10
11  (noting that it is insufficient to allege a violation of a railroad company's own rules without citing
12  to any applicable federal regulation mandating these rules).
13       Nonetheless, the court finds that genuine, material issues remain in dispute as to whether
14  Neu violated federal speed limit regulations before colliding with the Jimenez truck. Under
15  federal regulations, the maximum allowable operating speed for a passenger train traveling on a
16  Class 4 track is eighty miles per hour. *See* 49 C.F.R. § 213.9. While defendants argue that the
17  train "was at all relevant times traveling 79 mph prior to the accident," (Doc. No. 62 at 34–37),
18  plaintiff asserts that the train traveled eighty one miles per hour prior to the collision, (Doc. No.
19  77-1 at 8, ¶ 23), and locomotive data also indicates that the train traveled eighty one miles per
20  hour for .05 seconds before the collision. (Doc. No. 77 at 2–3.) Given that these "differing
21  versions of the truth" exist as to the train's compliance with federal speed limit regulations,
22  defendants are not entitled to summary judgment on the issue of plaintiff's excessive speed
23  claims against defendant Neu. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 631.
24       The court also finds that plaintiff's tort claim for failure to slow the train to avoid hitting
25  Jimenez is not preempted by federal law. Defendants acknowledge that tort claims based on
26  failure to slow trains are not preempted if there is a specific, individual hazard present. Instead,
27  they argue that preemption applies here due to the absence of such a hazard. (Doc. No. 62 at 36.)
28  The court disagrees. The parties do not dispute that Neu, before reaching the crossing, was aware

that the Jimenez truck and trailer had stopped on the train tracks. (Doc. No. 77-1 at 13, ¶¶ 46–47, 50.) It is also undisputed that some amount of time passed between the point when Neu first spotted the Jimenez truck and when she began to slow the train. (*Id.*) Though defendants argue that the claim is preempted until the moment Neu realized that the truck was not going to move and a collision was imminent, (Doc. No. 62 at 35–37), the court does not find that defendants' theory to be supported by authority.

Federal courts analyzing the exception to preemption for specific, individual hazards have found that such hazards exist in circumstances that are "out of the ordinary," *Liboy*, 363 F. Supp. 2d at 1340, such as when "a motorist [is] stranded on a crossing," *Carter*, 63 F. Supp. 3d at 1155. While defendants correctly note that common events, such as a pedestrian or a motorist approaching the train tracks, do not represent specific, individual hazards, the situation presented here was not an ordinary one. Jimenez's truck was not simply approaching the train tracks. Instead, the Jimenez truck had stopped over the train tracks and was motionless for a period of time before Neu began to slow the train. The situation was one "that could cause an imminent collision and of which [defendant] was aware." *Carter*, 63 F. Supp. 3d at 1155. Accordingly, the court concludes that plaintiff's claim based on Neu's alleged negligent failure to slow is not preempted.

The court also finds defendants' arguments concerning causation to be unpersuasive. Defendants have put forward some evidence indicating that any delay on the part of defendant Neu in slowing the train could not have caused the train's collision with the Jimenez truck; that is, that even if Neu had slowed the train immediately after the Jimenez truck stopped on the crossing, the collision would not have been avoided. (Doc. No. 62 at 40.) However, plaintiff has brought forward evidence that Neu's delay in slowing the train magnified the impact of the collision, and aggravated the severity of the injuries sustained by plaintiff as a result of the accident. (Doc. No. 77 at 11.) Thus, drawing "all reasonable inferences supported by the evidence in favor of the non-moving party," the court concludes that genuine issues of material fact still remain in dispute as to whether any negligence on the part of Neu constituted the legal cause of plaintiff's injuries. *Walls*, 653 F.3d at 966. Accordingly, defendants are also not entitled to summary judgment in

their favor as to plaintiff's negligence claims against Neu based on their argument that she has failed to present evidence of causation.

CONCLUSION

For the reasons stated above:

1. Defendants' motion for summary judgment (Doc. No. 62) is granted as to plaintiff's negligence claims against defendant Amtrak for failure to train employees and failure to properly warn passengers in emergency situations; and

2. Defendants' motion for summary judgment (Doc. No. 62) is denied as to plaintiff's negligence claims against defendant Barbara Neu for excessive speed and failure to slow the train in order to avoid the collision in question.[8]

IT IS SO ORDERED.

Dated: **June 28, 2016**                     _____
                                              UNITED STATES DISTRICT JUDGE

---

[8] The court notes that the trial of this action is currently scheduled to commence on July 26, 2016. However, due to the submission of the summary judgment motion which is the subject of this order, the Final Pretrial Conference originally scheduled for May 23, 2016, was vacated pending the issuance of this order. (Doc. No. 88.) Accordingly, no Final Pretrial Conference has been conducted and no Final Pretrial Order has yet issued. The court also notes that a defense motion to continue the trial date has been noticed for hearing on July 5, 2016. (Doc. Nos. 90 & 91.) That motion is opposed by plaintiff. (Doc. No. 92.) As a practical matter, the May 23, 2016 trial date, cannot be maintained. Law and motion is now closed. However, a new date for the Final Pretrial Conference must be set, allowing sufficient time for the filing of Pretrial Statements. Moreover, a new trial date will need to be set no less than 8 weeks after the Final Pretrial Conference is held. Accordingly, the parties are directed to meet and confer and, if possible after conferring with the undersigned Courtroom Deputy Renee Gaumnitz, file a proposed stipulation and order setting forth a new schedule with respect to the Final Pretrial Conference and Trial. If the parties cannot reach such a stipulation, the court will reschedule the case at the July 5, 2016 hearing on the motion to continue.